Our first argument is going to be partially on video. Good morning, counsel. Good morning, Your Honor. Attorney Glenn Formica representing the appellant or petitioner, Miguel Ortiz-Diaz. And Mr. McLaughlin on video. That is correct, Your Honor. Okay. You may proceed, Mr. Formica. Good morning, Your Honor. To place the two issues in context, Your Honor, the first issue that we're presenting, of course, is whether or not the notice to appear, whether the arrest, the immigration arrest that occurred back in 2012 and then again in 2016, was done improperly. The second issue is based on whether or not the judge erred on his findings for cancellation of removal, specifically emphasizing categorically the good moral character component of the standard. The most important thing for, I think, this Court to consider when it's reviewing both of these briefs and when it's considering its decision in this case is the importance or the effect of an immigration arrest on the immigrant, him or herself. But these weren't immigration arrests. They were DUI arrests, weren't they? They were, Your Honor, but subsequent or, you know, after the DUI arrest, immigration came in and made another arrest. And I don't want to get beyond the scope of, you know, what's been briefed, but just placing it in that context, you have a criminal arrest where, of course, the Court will certainly recognize, you know, Eighth, Sixth, and Fourth Amendment rights. But then you have a detainer coming in, which is going to detain and restrain somebody from their liberty. And in that, we're under a civil proceeding without many of the protections that you would have in the criminal proceeding. So trying to look at this, granted, you know, one is civil and one is criminal, but the constitutional implications of that are very significant. And, again, without getting beyond the scope of the brief, but just explaining the importance of this issue, you know, that civil arrest, that civil immigration arrest will certainly impact that person's right, life right, and potentially even their criminal prosecution. But that's not what's before the court. What's before the court, you know, specifically on the case law is Lopez-Mendoza, which is a 1984 Supreme Court decision, which recognized that when that immigration arrest is particularly, quote, egregious violation of the Fourth Amendment right. Also before the court, of course, is Almeida-Amaro, which is this court's decision from 2006, incorporating or recognizing the findings in Lopez-Mendoza. The egregious part of this, Your Honor, is that we now have a civil law enforcement agency out detaining and restraining the liberties of individuals. And in this case, one of the claims of egregiousness is the fact that they weren't, that Mr. Ortiz was not advised of his right to counsel, but I would emphasize his right to counsel or contact. And the reason I would emphasize that is. Doesn't that right only attach in removal proceedings? It does, but I also believe it attaches at the commencement of removal proceedings. And in this case, we have a little bit of a blurry timeline because there was actually an NTA issued in 2012, but it was never actually returned to the court. And without getting into a rabbit hole of, you know, whether or not it was actually issued because it went to court. Do you have the authority for the proposition that there's a requirement of notice in that context? Not based on our briefs, Your Honor. On what grounds would you urge us to find one? Specifically, whether or not there's a. Well, you're saying it was egregious not to tell him. So we would have to conclude that yes, indeed, he should have been told. And I'm just asking you for where we would look to, or on what basis we would reach that conclusion. I ask this because, for instance, by analogy, a defendant does not have to be told he has a right to counsel except in connection with interrogation. Correct. When he's arrested, a criminal defendant. Correct. So what would be the rationale on which we would conclude that at this point in an immigration proceeding, a person should be told of his right to consular consultation? In the facts of this specific case, it would be in part because they had initiated proceedings against him in 2012, although incomplete. Now, the one thing I. . . Also, I may be not making myself clear. First of all, is it the defendant's right to consular consultation? Usually these are matters of treaty, which are between the sovereigns. So I'm not sure whether you've given us authority that there even is a personal right here. And then the question is whether, if there is, there's a right to notice of it. So help me out. Okay. So trying to answer that directly and taking it in sort of reverse order, the Article V of the Vienna Convention would be regulation, statutory. I mean, statutory, not regulation. It would be statutory. Immigration is statutory. Everything, you know, and we know that from the Pereira decision, which was articulated well. So if it's a statutory right, it's not so much that it's a right, I would argue, of Mr. Ortiz, but it is a process that immigration is compelled or DHS is compelled to follow. And so when it doesn't follow the regulations, or I keep saying regulations, I mean statutes, Your Honor, when it doesn't follow the statutes, I would say that that in and of itself, you know, opens the door for, you know, claims that. That would suggest that every statutory violation is sufficiently egregious to trigger the relief you want? I don't think. That's the standard is egregiousness, right? Correct. But they're actually, in Lopez, Your Honor, they're talking about egregiousness under, you know, the Fourth Amendment. And so we're conflating. The Fourth Amendment, it's statutory. Correct. On the Vienna side of it, the right to counsel, I think, is where Lopez, and I don't mean to get too far into the weeds on this, but, you know, Lopez is looking, I think, more on the constitutional claim and the right to counsel and those things. And I think even this Court in Alameda, the sense I have from that decision, is that they're looking more at the constitutional right. I think where the consular comes in is under the Fifth Amendment because you're talking about due process. And it's under that Fifth Amendment that that's where DHS becomes fully accountable. So in this case, just backing up, I do think that if we accept that the initial encounter with ICE in 2012 commenced removal proceedings, even if defective, and they don't argue necessarily that removal proceedings weren't commenced. That's just not part of the discussion. But assuming that, now we're getting to the deceit that was employed by DHS to, you know, further its arrest. What deceit was that, having him sign? What deceit are you referring to? Your Honor, if we look in the record, there were misrepresentations about if you don't sign, we already have you on a deportation order. They told him that. That was his presupposition that he was already subject to it. You're not going to be allowed to go upstairs, and so on. Now, in the narrow context of this case, we can argue about how egregious that was or not. What I think is offensive, and I, you know, use that respectfully, is that DHS is using any type of deceit. Because in... Signing the NTA? Correct. Giving misinformation. And where I think it... I'm typically seeing, assuming all that is accurate, what should be the consequence, though? I think the consequence should have been the motion to suppress. And, you know, my time is running short. But I would like to make this point. It's expired. I would like to make this point. We have a very large law enforcement slash civil enforcement agency. They should be held to a very, very high standard in everything they do. And whenever there's a misrepresentation, that misrepresentation, if it is shown that they made the misrepresentation, that in and of itself is egregious. Because to allow that size of an agency to operate based on misrepresentations, even if they're relatively minor, opens the door to a policy and a culture that I don't think we want to see. I'm sorry to... And I'm sorry to... Since I'm asking the questions, I think you're allowed to answer. So my... I'm still just not understanding in the context of... The remedy is suppression. We would be suppressing the evidence of your client's alienage if that's the evidence we suppress. And that was independently, as I understand the record, and correct me if I'm misunderstanding, that was in the hands of the government by virtue of this TPS application. So even in the context of criminal proceedings where we're talking about constitutional rights, we have an independent source doctrine in the Fourth Amendment context that would say if the government had it legitimately from an independent source, we don't suppress evidence. Your Honor... I don't understand what I'm missing. Right. In this case, 1999, he filed a TPS application and presented, you know, information about his alienage to USCIS or INS back in 1999 regardless. But that's not the egregiousness here. It's notwithstanding that information that they made an arrest under false or presumably false pretenses and misinformation. So it's a question of timing. Even if they could have gone... I don't believe there's any indication in the record that, you know, we're here because we got you on TPS. You know, we've got this TPS application. What do you think of it? They were here saying we got you in 2012 on a notice to appear and then proceeded to give him a lot of bad information to get him to sign off and go in front of the judge. What he signed didn't acknowledge his alienage. It just acknowledged notice of the proceedings and all. If we suppressed everything that's in the notice he signed, that wouldn't give you the relief you want unless I'm missing something. Your Honor, you know, I said a billion times to myself I was not going to use criminal analogs. But coming down here, I think the issue is that the motion to suppress is to prevent the government from benefiting from the fruits of the poisonous tree. Well, that's Judge Livingston's point. They knew the information you're talking about beforehand. It wasn't derived from the notice unless, again, we're missing something. Well, they had the information maybe available to them. I don't agree necessarily that on this record that they were saying at the time they detained him, hey, we have your TPS. That's kind of their coming afterwards to say, but we had this information anyway. I thought his own attorney admitted that the agency had independent evidence, namely his 1999 application for temporary protected status and employment authorization. And it was in that that he attested that he was a national and citizen of Guatemala. That is correct. That's all well before the deceitful conduct that you're alleging. Correct, but that predates all of that information, and the attorney was correct in stating that, obviously. All of that would predate the arrest. Our focus here is on the arrest itself, and the information they seem to have attested to was that we have you on this 2012 NTA. I think you're correct, Your Honor, if the issue was they picked him up on a database search, they came in off the TPS application, walked down and said, hey, we're detaining you. Here's the TPS. You've certified you're not an alien. But that's not what happened here. What happened here was there was a lot of misrepresentations, and they made an arrest, and it's our contention that that violates, for all the reasons in the brief, his Fifth Amendment. You have reserved three minutes for rebuttal. Thank you, Your Honor. Mr. McLaughlin. Thank you, Your Honor. May it please the Court, I am Andrew McLaughlin. I represent the Respondent Acting Attorney General of the United States. I'd like to thank you for the opportunity to appear by VTC, and I'd like to thank Mr. Formica for his collegiality throughout all of this. It is the government position that this case is squarely governed by essentially two authorities. One is Lopez Mendoza, and the other is the jurisdictional limitation in INA242A2BI, which bars judicial review of discretionary determinations for cancellation of removal, which was subsequently amended by the Real ID Act to allow judicial review of questions of law but not of questions of fact. The reason that Lopez Mendoza squarely governs this is essentially two of the holdings. The first is the holding that credible evidence gathered in connection with peaceable arrests need not be suppressed in a civil immigration, civil deportation proceeding. The second is the holding that the body or identity of the respondent in civil proceeding is never suppressible as a fruit of an unlawful arrest, even if it is conceded that the arrest was unlawful. Together, those holdings preclude all of the arguments that Mr. Ortiz-Diaz is making. What about the argument that Mr. Formica made about the deceit practiced by this large agency? Are you offended, counsel? Your Honor, the test—we're only referring here, I think, to the test for egregiousness. I haven't even identified a violation of anything with respect to what took place there. If you look at—Mr. Formica is talking about the 2016 event, when if you look at the actual I-213 that he's seeking to suppress from 2012, it specifically says, systems checks reveal that the subject applied for temporary protective status in 1999. So at the time of the 2012 arrest, they already had access to this information using his identity, access to the information regarding his TPS application, and they had all of that available to them in 2016. Whether the person who went to pick him up at the police station said something about an NTA or not doesn't really make a difference as far as I can tell. And as Judge Rajit pointed out, it doesn't affect anything that took place after. That was a discrete event that took place in a short period of time. He subsequently was taken to the DHS facility and was asked his alienage, and he freely gave his alienage. So I don't see any impact whatsoever to the concept of deceit, although I would point out, if you wanted to go to criminal law cases, you could find criminal law cases that didn't even find a Fourth Amendment violation from police officers lying to people, much less an egregious Fourth Amendment violation. And there's certainly no allegation of a rule violation of some sort here. Does that answer your question, Your Honor? Yes, it does. But fundamentally here, we have a situation where the Supreme Court has said that the identity of the individual is not suppressible, and if you have other evidence of his alienage, that individual is removable. Or at least, if it's strictly evidence of the alienage, the burden is then on the individual to demonstrate their lawful presence in the United States. But here, the TPS application itself demonstrates both alienage and unlawful presence. So the government had in its possession and presented to the immigration judge independent evidence preexisting any unlawful activity identified by Mr. Ortiz-Diaz that established his removability. If the Court has nothing further, I would submit. Did you want to speak on the second issue that counsel didn't get a chance to speak about, which is the balancing of the equities of the children? Well, the way counsel introduced the argument, it had to do with the discretionary basis for denying based on the good moral character finding, which actually wasn't a matter that was decided by the Board. If you look at the Board's decision, the Board specifically did not reach the immigration judge's alternate finding that the respondent was ineligible for cancellation or removal. That discretionary element, once you've established statutory eligibility, which includes hardship, which is also discretionary, then the immigration judge went further and said based on your criminal convictions, I'm going to say I wouldn't grant in the exercise of discretion either. But that's not before the Court at all. That matter wasn't ruled on by the immigration judge. That wasn't ruled on by the Board. The immigration judge ruled on both. So the only matter that's actually before the Court of Appeals here is the Board's decision in which the Board said this alien failed to demonstrate statutory eligibility under the discretionary element of extraordinary and extremely unusual hardship, which the immigration judge said the evidence before him did not demonstrate anything beyond ordinary hardship of an individual being removed with his family or the family members being removed from the country. Thank you. Thank you. We'll turn to Mr. Formica, who has three minutes for rebuttal. Thank you, Your Honor. Just briefly in rebuttal, if the court reviews the CAR at 440 through 442, the timeline of the facts are laid out. Mr. Ortiz was held overnight on July 24, 2012, was told he was being held for immigration to arrive the next day. The officers took him to the office, and they had him sign papers for his deportation. Then, so I would submit, Your Honor, that on the record proceedings, which would trigger all of the rights that Mr. Ortiz, the statutory and at this point regulatory rights, should be given to Mr. Ortiz and followed. And then on September 9, 2016, he was reporting to his probation officer. On November 10, after reporting to his probation officer, he was questioned by another man who only afterward said he was from immigration. The immigration officer arrested and searched him, taking his Guatemalan passport from his pocket. Petitioner asserts that he was not advised of his rights to counsel or contact a consular official, which I just want to emphasize that takes me back to what I opened my argument with, that he should have been provided his consular right. Then he was taken to the DHS office in Hartford, and that's where a lot of the egregious conduct that we've already discussed occurred. So that's the timeline in the capsule. I recognize that immigration may have had, prior to that arrest, certain information, but this is a civil matter, statutory matter, and he was entitled to statutory process. Thank you, Your Honor. Thank you. Thank you both. We'll reserve decision. At this point, we're going to take a short break to remove this equipment, I believe. Thank you all. We'll return to the bench in five minutes.